USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONTINENTAL INDUSTRIES GROUP, INC.,

                Plaintiff,

-against-

MEHMET ALTUNKILIC,

                Defendant.

14 Civ. 790 (AT) (JLC)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, District Judge:

    This case arises out of the industry of international commodities and chemicals trading. Plaintiff, Continental Industries Group, Inc. ("CIG" or "Plaintiff"), filed this action in 2014 against Defendant, Mehmet Altunkilic, alleging that he misappropriated CIG's trade secrets and diverted away its customers and suppliers. Defendant resides in Turkey and previously worked for a distributor of CIG's products. He initially appeared by counsel, who withdrew on April 28, 2014. ECF No. 18. Since 2016, Defendant has ceased to participate in this case. The Court entered a default judgment on October 19, 2016, ECF No. 59, and referred the case to the Honorable James L. Cott for a damages inquest, ECF No. 58. CIG seeks compensatory damages in the amount of $28,242,52, punitive damages in the amount of $56,485,048, and a declaratory judgment. In his Report and Recommendation ("R&R"), ECF No. 65, Judge Cott determines that "no damages or declaratory relief [should] be awarded because CIG has not stated any actionable claim for relief." R&R at 1, ECF No. 65. On July 21, 2017, CIG filed objections to the R&R, Pl. Obj., ECF No. 66, and the Court invited supplemental objections, ECF No. 67, which Plaintiff filed on August 18, 2017, Pl. Supp. Obj., ECF No. 68. For the reasons stated below, the Court ADOPTS the R&R in its entirety.

## DISCUSSION[1]

I.     Legal Standards

    A. Review of Magistrate Report

    A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "Courts review *de novo* those parts of a report and recommendation to which objections are made, *Mulosmanaj v. Colvin*, No. 14 Civ. 6122, 2016 WL 4775613, at *2 (S.D.N.Y. Sept. 14, 2016), and the remainder for clear error on the face of the record, *Rigano v. Astrue*, No. 07 Civ. 10282, 2011 WL 1406185, at *4 (S.D.N.Y. Mar. 30, 2011). Courts "also review the report and recommendation for clear error where a party's objections are 'merely perfunctory responses' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition.'" *Assenheimer v. Comm'r of Soc. Sec.*, No. 13 Civ. 8825, 2015 WL 5707164, at *2 (S.D.N.Y. Sept. 29, 2015) (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)); *see also McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) ("[O]bjections must be

---
[1] The Court assumes familiarity with the facts of this case, which are fully laid out in the R&R.

specific and clearly aimed at particular findings in the magistrate judge's proposal." (internal citation and quotation marks omitted)).

      B. Default Judgment

Where a defendant has defaulted, "a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Nevertheless, "the default establishes [a defendant's] liability [only] as long as the complaint has stated a valid cause of action." *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), *aff'd*, 512 F. App'x 45 (2d Cir. 2013) (citations omitted). "In other words, even after a default, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Johnson & Johnson v. Azam lnt'l Trading*, No. 07 Civ. 4302, 2013 WL 4048295, at *8 (E.D.N.Y. Aug. 9, 2013). Thus, "while the factual allegations of the complaint [against a defaulted defendant] need not be set forth in detail, they must be adequate to permit a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at *8 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). By contrast "a complaint containing only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

II.    Objections

      A. Procedural Objections

CIG objects to several procedural aspects of the R&R process.

        1. Scope of Magistrate's Authority

Plaintiff's first objection is that Judge Cott improperly reaches the issue of liability. Plaintiff argues throughout its submissions that, after the Court entered default, Judge Cott could only calculate a sum for damages and not otherwise evaluate the validity of the claims. Pl. Obj. at 5; Pl. Supp. Obj at 1. Plaintiff misconstrues the relevant law.

"[A] district court retains discretion . . . once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Finkel*, 577 F.3d at 84 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, a court has rejected Plaintiff's exact argument, holding that there is "no substance" to a plaintiff's contention that a magistrate judge lacked the authority to make a "*sua sponte* appraisal of the complaint's legal sufficiency" upon referral for a damages inquest after the Court "entered a default judgment." *Rivera v. Ielardi*, No. 82 Civ. 7082, 1986 WL 981, at *1 (S.D.N.Y. Jan. 15, 1986) (citing *Au Bon Pain*, 653 F.2d at 65).

After all, the Court called upon Judge Cott to conduct an inquest into damages—the "limited but significant power of post-default evaluation," *id.*, and he could not do so absent an evaluation of Plaintiff's claims. In addition to the more than $85 million in damages sought by Plaintiff, Plaintiff also requested a declaratory judgment, Pl. Inquest Mem. ¶¶ 62, 134–42, ECF

No. 63—a form of relief that necessarily required Judge Cott to assess Defendant's liability. Although Defendant's default rendered all factual allegations conceded and true, default does not transform a complaint's threadbare recitals of the elements of a claim into liability. Accordingly, Plaintiff's first objection is overruled.

### 2. Lack of a Hearing

Plaintiff also claims Judge Cott erred by failing to hold an in-person hearing. Pl. Supp. Obj. at 1. This argument is without merit, and the objection is overruled.

By its terms, Federal Rule of Civil Procedure 55(b)(2) permits—but does not require—a district court to hold an oral hearing for a damages inquest. Fed. R. Civ. P. 55(b)(2); *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper") (internal quotation marks and citation omitted). "That rule allows but does not require the district judge to conduct a hearing." *Id.*

In his order establishing the procedure for the damages inquest, Judge Cott stated, "the Court hereby notifies the parties that it may conduct this inquest based solely upon the written submissions of the parties." Inquest Order ¶ 3, ECF No. 60. His order also invited Plaintiff to request an oral hearing if it believed one was necessary. *Id.* Plaintiff did not make such a request, and Judge Cott, therefore, ruled on the papers. Accordingly, Plaintiff's claim that Judge Cott "declined to hold an inquest on damages" and ruled "without the benefit of an evidentiary hearing," Pl. Supp. Obj. at 1, mischaracterizes the record and the relevant law. Judge Cott was not required to hold an evidentiary hearing, *Bricklayers*, 779 F.3d at 189, and Plaintiff did not request one.

### 3. Briefing on Liability

Plaintiff objects that the R&R ruling was issued without "briefing on liability." Pl. Supp. Obj. at 1. This argument also distorts the record. In Judge Cott's procedural order, he invited Plaintiff to "submit a memorandum of law setting forth the legal principles applicable to Plaintiff's claim or claims for damages." Inquest Order ¶ 2. And, as discussed, he notified Plaintiff that the Court may rule on paper submissions alone. *Id.* ¶ 3. Plaintiff was, therefore, given a chance to brief liability.

### 4. Notice

Finally, CIG appears to erroneously believe that the Court was required to notify CIG that it needed additional evidence or allegations to support its claims. Pl. Supp. Obj. at 6 ("[N]o notice was provided to CIG that additional evidence of these relationships was necessary."); *id.* at 11 ("The foregoing information was not provided . . . in the first instance because it was not instructed by either Judge Torres or Magistrate Judge Cott to further support the causes of action.").

The Report and Recommendation process—and indeed, our adversarial system of justice—do not call upon the Court to warn parties that their claims are weak. When the Court referred the inquest to Judge Cott, and when Judge Cott invited Plaintiff to submit evidence and a memorandum of law to support its claims, Plaintiff should have provided everything it had. The Report and Recommendation process does not permit "parties to undertake trial runs of their motion, adding to the record in bits and pieces depending upon the rulings or recommendation they received." *Cf. Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). Such a practice would squander the efficiency gains of the Report and Recommendation process. For that reason, the Court was not required to provide any additional notice to Plaintiff regarding the strength of its claims. This objection is overruled.

B. Sufficiency of the Claims

1. Tortious Interference with Contract

The R&R recommends that no damages be awarded because Plaintiff's allegations regarding its claim for tortious interference with a contract "are insufficient to state a cause of action." R&R at 12. The Court agrees. Plaintiff's objections on this claim are overruled.

To plead a claim of tortious interference with a contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996).

The crux of this claim is that Defendant diverted third-party suppliers and customers away from CIG and to Defendant's company, Plasmar. But Plaintiff has provided little in the way of evidence or well-pleaded allegations to establish the first element of this claim: the existence of a valid contract between CIG and third parties. The complaint refers to several entities that Defendant "contacted in violation of [his] dut[y] to CIG," and alleges that he "tortiuously interfered with [Defendant's] agreements with these suppliers." Compl. ¶ 37. But Plaintiff does not provide copies of any agreement, does not summarize any agreement, and fails to (even in conclusory fashion) describe any single agreement.[2]

Such a lack of specificity is fatal to Plaintiff's interference with contract claim. *See Katz v. Travelers*, 241 F. Supp. 3d 397, 408 (E.D.N.Y. 2017) (holding that "stating in a conclusory fashion that plaintiffs had lost contract and business relationships, without citing to specific instances," is insufficient to state claim); *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) ("Plaintiff has not plausibly alleged adequate details about a specific contract between itself and a third party, but merely has alleged that it has 'agreements'

---

[2] The Court acknowledges that at the inquest stage, Plaintiff submitted a list of suppliers and customers it claims "on information and belief" were interfered with by Defendant. Karabey Decl. ¶¶ 19-20, ECF No. 63-1. But still, this list of suppliers and customers contains no description of the relevant agreements for each entity. Nor does it explain how Plaintiff arrived at the damages it purports to estimate—in contravention of Judge Cott's instructions. Inquest Order ¶ 2 ("[Plaintiff] should demonstrate how Plaintiff has arrived at the proposed damages figure(s); and should be supported by one or more affidavits, which may attach any documentary evidence establishing the proposed damages.").

with its customers. This is insufficient."); *Bose v. Interclick, Inc.*, No. 10 Civ. 9183, 2011 WL 4343517, at *10–11 (S.D.N.Y. Aug. 17, 2011) (dismissing a tortious interference with contract claim where plaintiff claimed that it had contracts with various parties, but did not give any "facts regarding the terms of the contracts or the specific parties to the contracts"); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (holding that claim for tortious interference with a contract failed to state grounds for relief because it "simply allege[d] that a contractual relationship existed between [the parties], but sets forth no facts to allege what kind of contract [they had], whether it was nonexclusive, and whether it was valid").

2. Tortious Interference with Prospective Advantage

In a similar vein, Judge Cott also recommends that no damages be awarded on Plaintiff's claim for tortious interference with prospective advantage. R&R at 12. Like the interference claim discussed above, Plaintiff's objections are also overruled.

Tortious interference with a business relationship (sometimes called tortious interference with prospective economic advantage) has four elements: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (citation omitted).

Here, too, Plaintiff provides no detail about the "business relations" that were purportedly harmed. As a result, no damages should be awarded because there is no cognizable claim. *See Plasticware, LLC*, 852 F. Supp. 2d at 402 (finding no cognizable claim where "Plaintiff has not adequately alleged *specific* business relationships with which Defendant allegedly interfered.") (emphasis in original); *see also Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a *specific contract or business relationship* will not withstand a motion to dismiss" and that "[t]he complaint must also state how the defendant interfered in those relationships" (emphasis in original) (internal quotation marks omitted)).[3]

The complaint fails to allege the existence of any specific "business relations" or "prospective advantage." Nor has Plaintiff, as part of the inquest procedure, submitted any "invoices, proof of payments, or any other form of agreements that would demonstrate the existence of those third party relationships." R&R at 14. As discussed above, Plaintiff submitted a list of suppliers and customers, ECF No. 63-1 at 59–60, but the list fails to provide any detail about the business relationships. Nor does Plaintiff distinguish between entities that

---

[3] Plaintiff complains that it should not be penalized for failing to provide evidence that was denied to it by virtue of Defendant's default. Pl. Supp. Obj. at 6. Although the Court recognizes that there are some elements of the claim which would be difficult for Plaintiff to establish without the participation of a defendant and discovery, this element is not one of them. Plaintiff failed to provide allegations or evidence regarding information entirely within its own custody: business relationships with its own customers and suppliers.

had a valid contract with Plaintiff—versus those that had merely a prospective advantage. So it is not clear how the magistrate could calculate damages.

These submissions do not satisfy minimum pleading standards—let alone provide a basis for awarding damages with a "reasonable certainty." *RGI Brands LLC v. Cognac Brisset–Aurige, S.A.R.L.*, No. 12 Civ. 1369, 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *adopted by* 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013). Even after default, the complaint's allegations "must be adequate to permit a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Johnson & Johnson*, 2013 WL 4048295, at *8 (quoting *Ashcroft*, 556 U.S. at 678). No such inference arises from Plaintiff's submissions.

### 3. Aiding and Abetting Breach of Fiduciary Duty

The complaint also alleges that Defendant assisted Hakan Ustuntas, a CIG employee since 1989, to breach his duty of loyalty. Compl. ¶¶ 11, 62. Because Ustuntas was a CIG employee, he owed a "duty to act in CIG's best interest." Pl. Inquest Mem. ¶ 83. The R&R recommends that no damages should be awarded for this claim—primarily because Plaintiff had not plausibly alleged or otherwise established an element of the claim: that Defendant "*knowingly* aided and abetted a breach of Ustuntas' fiduciary duty." R&R at 18 (emphasis in original). Plaintiff's objection is overruled.

"A claim for aiding and abetting a breach of fiduciary duty," as relevant here, requires "that the defendant knowingly induced or participated in the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003)). "To plead a cause of action for aiding and abetting breach of fiduciary duty, a plaintiff must allege both that the defendant had actual knowledge of the primary violator's status as a fiduciary and actual knowledge that the primary violator's conduct contravened a fiduciary duty." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144–45 (S.D.N.Y. 2010) (citation and internal quotation marks omitted), *aff'd in part*, 431 F. App'x 17 (2d Cir. 2011), *and aff'd*, 651 F.3d 268 (2d Cir. 2011).

The core of Plaintiff's objection is that "it is expressly alleged that Defendant knew of Ustunuas' fiduciary duty to [Plaintiff]." Pl. Supp. Obj. at 9. However, nowhere does the complaint contain even a conclusory allegation as to Defendant's knowledge—let alone allegations that make Defendant's knowledge plausible. Plaintiff refers the Court to six paragraphs that discuss the relationship between "Defendant and Ustuntas"—none of which shed light on the issue of knowledge. *Id.* (citing Compl. ¶¶ 10–15, 32). At the inquest stage, Plaintiff offered a proposed finding of fact that: "Altunkilic knowingly induced Ustuntas to breach his fiduciary duties and actively participated is such breach." Pl. Inquest Mem. ¶ 87. But Plaintiff failed to support this statement, citing only to case law. The Court, therefore, need not accept it. *See* Inquest Order ¶ 2 ("Each Proposed Finding of Fact shall be followed by a citation to the paragraphs of the affidavit(s) and or page of documentary evidence that supports each such Proposed Finding.").

This failure to properly allege or otherwise establish knowledge "is fatal" to Plaintiff's claim, because without it, a Plaintiff "stops short of the line between possibility and plausibility

of entitlement to relief." *Krys v. Butt*, 486 F. App'x 153, 157 (2d Cir. 2012) (summ. order) (quoting *Iqbal,* 556 U.S. at 678 (citations and quotation marks omitted)). Accordingly, this claim is not cognizable and no damages are appropriate.

### 4. Misappropriation of Trade Secret

The R&R also finds Plaintiff's third and fourth causes of action, misappropriation of trade secrets and confidential information, are not cognizable. R&R at 21. In short, the objections dispute the R&R's finding that the information "was not a trade secret." Pl. Supp. Obj. at 11.[4] Specifically, Plaintiff argues that the R&R "fail[s] to acknowledge that Defendant himself deems the very same information to be secret," and it references allegations that Defendant established a shell company to keep his list of suppliers a secret. *Id.* (citing Compl. ¶¶ 19, 29-31).

Such objection is overruled. Information derives trade secret protection not because others tend to keep similar information secret, but because the specific information "is in fact secret." *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 195 (S.D.N.Y. 2011) (quoting *Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 371 (S.D.N.Y. 2006)). Courts consider secrecy in two ways: First, the information must have substantial exclusivity—that is, it must not be in the public domain. Second, the owner of the purported trade secret must use precautionary measures to preserve the secret. Melvin F. Jager, Trade Secrets Law § 5:16 (Oct. 2017) (citing *Delta Filter Corp. v. Morin*, 108 A.D.2d 991, 992 (3d Dep't 1985) (holding that machines that were open to inspection by competitors cannot be a trade secret)). The fact that *Defendant* used shell companies to hide his list of suppliers tells the Court little about what *CIG*—the party asserting trade secret protection here—did to maintain the secrecy of its own supplier list.

Businesses typically argue they took reasonable measures to keep their proprietary information secret by contending that (a) they kept it secret pursuant to a confidentiality agreement, (b) they kept "the information in a locked building and on a password-protected computer system," (c) they "shar[ed] it with sales representatives only on a need-to-know basis," (d) they "emphasiz[ed] the need to keep this information confidential" in an employee handbook, and (e) by "frequently remind[ing] employees of the need to maintain the confidentiality of client and customer information." *Shamrock Power Sales, LLC v. Scherer*, No. 12 Civ. 8959, 2015 WL 5730339, at *26 (S.D.N.Y. Sept. 30, 2015). Plaintiff has offered nothing of the sort—the complaint and its submissions at the inquest stage contained no allegation or evidence on how the information was safeguarded. The complaint's allegations that the asserted trade secrets were "internal and proprietary information, [and were] kept confidential by CIG," or that "the information contained in the Trade Secrets was not generally known to the public," are "threadbare recitals of the elements of the cause of action" that do not suffice to establish liability, even after default.[5] *Johnson & Johnson*, 2013 WL 4048295, at *8.

---

[4] Because Plaintiff has only objected to the trade secret analysis, the Court reviews the R&R's findings on misappropriation of confidential information for clear error. Finding none, it adopts the R&R's analysis.
[5] Now CIG cites testimony of its president discussing efforts to keep CIG's market reports secret. Pl. Supp. Obj. at 11 & Ex. E. Although such evidence could support trade secret protection for market

7

The R&R concludes that no damages should be awarded on the trade secret claim because it is not cognizable. The Court agrees, and the objections are overruled.

5. Usurpation of Corporate Opportunity

Plaintiff's fifth claim is usurpation of corporate opportunity. This claim alleges that when Defendant invested in Plasmar, he should have first offered the opportunity to CIG. Compl. ¶¶ 81–84. The R&R finds that the claim for usurpation of corporate opportunity is not cognizable for two reasons: first, Plaintiff failed to establish the existence of a fiduciary relationship between it and Defendant, and second, Plaintiff has not shown any tangible expectancy in the opportunity to purchase shares in Plasmar and Marchem. R&R at 30.

"The corporate opportunity doctrine provides that 'corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation.'" *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 13 Civ. 4650, 2015 WL 7078641, at *4 (S.D.N.Y. Nov. 12, 2015) (citing *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 147 A.D.2d 241, 246 (1st Dep't 1989)).

There is no dispute that Defendant did not work at CIG. Rather, he worked for Continental Kimya Sanayi Ve Dis Tic. A.S. ("CKS"), an exclusive distributor of CIG's products. Compl. ¶ 9. CIG argues that Defendant owed CIG a fiduciary duty "due to the special nature of their relationship," Pl. Supp. Obj. at 12, relying on the fact that: Defendant worked as a salesman for CIG's exclusive distributor, Compl. ¶ 9, he "was intimately involved with all of CIG's and CKS' relationships with suppliers and customers," *id*. ¶ 10, and because he received bonuses from CIG, traveled to New York to attend meetings with CIG, and was in regular contact with CIG's President, Omer Karabey, *id.* ¶ 13.

"Whether one party is a fiduciary of another depends on the relationship between the parties." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 497 (S.D.N.Y. 2017). "[A] fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *Reuben H Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995). Courts should look first to any applicable contract and then to the parties' relationship more generally to determine whether a fiduciary relationship exists. *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 12 (2005). A fiduciary duty does not arise from a typical arms-length business transaction. *PetEdge*, 234 F. Supp. at 498.

---

reports, the Court will not consider it because this testimony was not raised with Judge Cott at the inquest stage. "Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation absent a compelling justification for failure to present such evidence to the magistrate judge." *Azkour v. Little Rest Twelve, Inc.*, 10 Civ. 4132, 2012 WL 1026730, at *2 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks and citation omitted); *see also Hynes*, 143 F.3d at 656 ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration."). No such compelling justification exists here.

Although the complaint pleaded facts that could potentially suggest a fiduciary relationship, *see* Compl. ¶¶ 9–13; *Off. Publications, Inc. v. Kable News Co., Inc.*, 775 F. Supp. 631 (S.D.N.Y. 1991) (holding that suit against exclusive distributor raised genuine issue of material fact whether parties enjoyed a fiduciary relationship under New York law), the usurpation claim nevertheless fails because Plaintiff has not established any entitlement to the corporate opportunity in this case: investment in Plasmar and Marchem.

There are two tests for determining a corporate opportunity. "The first test asks whether the corporation had an interest or 'tangible expectancy' in the opportunity." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 672 (S.D.N.Y. 2005), *aff'd* 469 F.3d 284 (2d Cir. 2006) (quoting *Burg v. Horn*, 380 F.2d 897, 899 (2d Cir. 1967)). "The second test asks whether an opportunity is the same as or is 'necessary' for, or 'essential' to, the line of business of the corporation, and whether 'the consequences of deprivation are so severe as to threaten the viability of the enterprise.'" *Id.* (quoting *Alexander*, 147 A.D.2d at 246–47).

CIG satisfies neither test. As to the first, no fact suggests that CIG had a "tangible expectancy" or an "interest" in investing in or acquiring Plasmar, Marchem, or any other company. *Design Strategies*, 384 F. Supp. 2d at 672; *Alexander*, 147 A.D.2d at 247–48 (holding that a "tangible expectancy" in a business opportunity has been interpreted to mean "something much less tenable than ownership, but, on the other hand, more certain than a desire or a hope" and rejecting plaintiff's overbroad theory that tangible expectancy is an "area into which the corporation could naturally or easily expand"). A classic example would be an employee swooping in at the last minute and purchasing "property which the corporation needs or is seeking," *Burg*, 380 F.2d at 899, such as a critical piece of real estate for a planned location—without telling his or her employer. By contrast here, CIG has not demonstrated having any need, interest, or expectancy in Plasmar—it did not take any steps to invest in Plasmar, nor did it have any history of investing in or acquiring similar companies.

Next, although CIG correctly identifies that there is a second test for establishing a corporate opportunity, Pl. Supp. Obj. 14–15, it says nothing more. It does not argue why the test is met here. For example, the objections do not discuss why investment or acquisition of Plasmar or Marchem was an opportunity "essential" to CIG's business or why consequences of denying CIG that corporate opportunity were "so severe as to threaten the viability" of CIG.[6] *Design Strategies*, 384 F. Supp. 2d at 672*; Alexander*, 147 A.D.2d at 246–47. Like the above, Plaintiff has not cited (and the Court is not aware of) any fact suggesting that investment in Plasmar or Marchem was "necessary or essential," or that Plaintiff's failure to invest in them or threatened Plaintiff's business.

Having determined that Plaintiff cannot establish the existence of a corporate opportunity, the Court finds that Plaintiff's usurpation claim is not cognizable. Plaintiff's objection is overruled, and no damages are appropriate.

---

[6] Because Plaintiff's objection on the second test is conclusory and general, the Court need not perform a *de novo* analysis of it. *Libbey v. Village of Atlantic Beach,* 982 F. Supp. 2d 185, 199 (E.D.N.Y. 2013).

6. Constructive Trust

The imposition of a constructive trust has been held to be an appropriate remedy for the diversion of a corporate opportunity. *See Poling Transp. Corp. v. A & P Tanker Corp.*, 443 N.Y.S.2d 895, 897 (2d Dep't 1981) ("If plaintiff can establish a diversion of corporate opportunity, the law will impress a constructive trust in favor of the corporation upon the property acquired."). Because the R&R finds that CIG did not have a cognizable claim for usurpation of corporate opportunity, it recommends against instituting a constructive trust. R&R at 31. In a three sentence objection, Plaintiff argues that it is owed a constructive trust because "CIG objects to the general finding that it has not stated a cause of action for other claims alleged in the Complaint." Pl. Supp. Obj. at 15. This objection is too vague and general to trigger *de novo* review. *McDonaugh*, 672 F. Supp. 2d 547. The Court sees no clear error with respect to the request for a constructive trust. For that reason, this objection is overruled.

7. Unjust Enrichment

Plaintiff's fifth cause of action also includes a claim of unjust enrichment. The R&R recommends that the claim is not cognizable and that damages not be awarded because it is duplicative of Plaintiff's corporate usurpation and trade secret claims—and to the extent it is not duplicative, Plaintiff had not "explained how it is distinct from the other causes of action." R&R at 33. Plaintiff's objection argues, in short, that "[u]njust enrichment is not subject to dismissal simply because it is duplicative," and that Judge Cott fails "to perform a separate analysis" on unjust enrichment. Pl. Supp. Obj. at 16.

Under New York law, an unjust enrichment claim is stated where a defendant has benefitted, at the plaintiff's expense, and equity and good conscience require restitution to plaintiff. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). As the Court of Appeals explained, unjust enrichment is "not available where it simply duplicates, or replaces, a conventional contract or tort claim," nor is it "a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it is available only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

At the inquest stage, Plaintiff's minimal submissions mentioned the unjust enrichment theory in terms that restated other torts, specifically usurpation of corporate opportunity and trade secret misappropriation. Pl. Inquest Mem. ¶¶ 112–114, 116; Compl. ¶ 82 ("By the acts alleged herein, including the theft and retention of CIG's Trade Secrets and Altunkilic's use thereof, and Ustuntas' and Altunkilic's usurpation and misappropriation of CIG's corporate opportunities to invest in and to own part of Plasmar and Marchem. Altunkilic has been and will continue to be unjustly enriched at CIG's expense and to CIG's detriment.").

And now in its objections, Plaintiff has not offered any theory explaining how its unjust enrichment claim is distinct. Nor has Plaintiff said how the claim falls into one of the "unusual situations" contemplated by the Court of Appeals in *Corsello*. Where Plaintiff has "fail[ed] to explain how [its] unjust enrichment claim is not merely duplicative of their other causes of

10

action," it is not cognizable. *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Plaintiff's objection that Judge Cott failed "to perform a separate analysis" on unjust enrichment mistakes the proverbial cart for the horse. Pl. Supp. Obj. at 16. It is Plaintiff's responsibility in the first instance to articulate the theory of its claim. Having failed to do so, either at inquest or now, Plaintiff's objection is overruled.

8. Unfair Competition

Plaintiff's eighth cause of action is for unfair competition. The R&R recommends that no damages be awarded because the unfair competition claim was similarly not cognizable—primarily because "CIG has not made any allegations that are specific to its unfair competition claim." R&R at 34. Rather, CIG's unfair competition claim "restates the general accusation that 'Altunkilic used Plaintiff's resources to create a competing company' by misappropriating CIG's Trade Secrets, soliciting CIG's employees, aiding and abetting Ustuntas' breach of fiduciary duty, and 'engaging in other forms of corporate bad acts,'"—claims that the R&R suggests are not cognizable. *Id.* (quoting Pl. Inquest Mem. ¶ 131).

In its objections on unfair competition, CIG again restates in conclusory fashion that "Defendant used Plaintiff's resources to create a competing company—from a former customer no less—by misappropriating the Trade Secrets, soliciting employees, aiding and abetting Ustuntas's breach of fiduciary duty and engaging in other forms of corporate bad acts." Pl. Supp. Obj. at 17.

To the extent the unfair competition claim is based on misappropriation of trade secrets, the Court has already found it non-cognizable. *See supra* Part II.B.4. The tort of misappropriation of trade secrets is "simply [a] species of the adaptable and capacious tort of unfair competition." *Geo Grp., Inc. v. Community First Serv., Inc.*, No. 11 Civ. 1711, 2012 WL 1077846, at *3 (E.D.N.Y. Mar. 30, 2012) (citation and internal quotation marks omitted). Accordingly, where "unfair competition claims are based entirely on the claims for misappropriation of trade secrets, and, essentially, restate those very same claims . . . courts generally consider them to be a single cause of action." *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 300 (E.D.N.Y. 2012).

In a similar vein, the Court has already analyzed CIG's claim for aiding and abetting Ustuntas's breach of fiduciary duty and determined that it fails because no fact suggested that Defendant aided and abetted with knowledge of the fiduciary duty. *See supra* Part II.B.3. Here, too, the lack of facts regarding Defendant's state of mind also preclude an unfair competition claim because Plaintiff cannot show that Defendant acted in "bad faith." *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012) ("[A] plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith").

The last theory for unfair competition that the Court can discern is Plaintiff's argument that Defendant improperly "solicited [CIG] employees." Pl. Supp. Obj at 17; Pl. Inquest Mem. ¶ 131. Although it is conceivable that an unfair competition claim could be predicated on employee solicitation, Plaintiff has provided nothing to support the claim other than the

11

conclusory and sole allegation that "[Defendant] has further solicited and induced other CIG and CKS employees to breach their agreements with CIG in connection with offers of employment to them by Plasmar and Marchem." Pl. Inquest Mem. ¶ 46 (citing Compl. ¶ 42); Compl. ¶ 63. No fact explains which employees were solicited, when they were solicited, or whether any contract restricted solicitation. To the extent such theory is even viable (an issue of law ignored in the objections), it fails because it has no basis in the record. Accordingly, as to unfair competition, CIG's objections are overruled.

9. Conversion

Plaintiff's objection to the R&R's rejection of its claim for conversion also fails. Pl. Supp. Obj. at 18. Because Plaintiff did not raise its conversion claim at the inquest stage, the R&R dismisses it in a footnote, noting that it is unlikely that CIG would have been able to establish a conversion claim because it "has not alleged that it was prevented from simultaneously accessing or using [its] data due to [Defendant], which would preclude CIG from establishing the second element of a conversion claim." R&R at 4 n.3 (citation and internal quotation marks omitted). Plaintiff's general objection does not trigger *de novo* review. *See McDonaugh*, 672 F. Supp. 2d at 547. Having determined that there is no clear error on this claim, the Court overrules this objection.

10. Declaratory Judgment

Finally, Plaintiff objects that "[t]he R&R does not articulate why [declaratory judgment] should not be granted." Pl. Supp. Obj. at 18. Of course, a declaratory judgment is a form of relief. Relief can only be granted after a plaintiff successfully establishes liability on at least one of its causes of action. Here, it appears the declarations that Plaintiff seeks are predicated on successfully establishing misappropriation of trade secrets or confidential information, Pl. Supp. Obj. at 18, which it cannot do, R&R at 21; *supra* Part II.B.4. Having determined that Plaintiff cannot establish liability on any of its claims, the R&R is correct in determining that no declaratory judgment is appropriate. This objection is overruled.

**CONCLUSION**

For the reasons stated above, the Court concurs with the recommendation of Judge Cott that Plaintiff does not state a single actionable claim. Accordingly, the R&R is ADOPTED in its entirety. Plaintiff is not entitled to any damages or declaratory relief.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: March 27, 2018
New York, New York

_____
ANALISA TORRES
United States District Judge